JOHN HAYDEN and others, in equity,

*vs.*

PARKER M. WHITMORE and others.

Sagadahoc.    Opinion December 19, 1882.

*Shipping. Demurrage. Practice. Equity.*

"Where under a charter party or contract of affreightment the duty of discharging the vessel rests upon the affreighters, and they unreasonably neglect to perform the same seasonably, they will not be relieved from the payment of just damages in the nature of demurrage by the omission of all express provisions in the contract for the payment of demurrage, or express .agreement as to the number of lay days.

In such case due diligence in the performance of their duty is impliedly required of the charterers, and they will be answerable to the owners of the vessel for the want of it.

A person cannot be both a plaintiff and a defendant in the same suit at law. In such case the remedy is by bill in equity, in which such decree may be had as will effect a proper adjustment of the respective rights and liabilities of all the parties interested.

BILL IN EQUITY, in which plaintiffs seek to recover freight on a cargo of one thousand five hundred and fifty-six tons of ice from Bath to New Orleans, at $2.25, .. .. $3501.00.

And demurrage twenty-one days at New Orleans, 2100.00.

$5601.00.

Less amount of cash rec'd from def'ts or their agent, 1495.95.

$4105.05.

Heard on bill, answer and proof.

The material facts are stated in the opinion.

*W. Gilbert*, for the plaintiffs.

*C. W. Larrabee*, for the defendants.

The claim for demurrage cannot be sustained. Demurrage, properly so called, arises out of the express terms of a charter party or out of the express stipulations in a bill of lading entered into by the master and owners, and adopted and assumed by the consignee. Conkling, Admiralty, 133, note *b* ; 1 Abb. Shipping, 383, *et seq.*

And when there is no agreement either by charter party or bill of lading for demurrage, none can be recovered. *Horn* v. *Bensusan*, 9 C. and P. 709.

The evidence in this case shows that demurrage, or damage in the nature of demurrage was waived. Again, the owners of the cargo have fifteen or twenty days as lay days, after the vessel reports at the custom house. *Schooner Volunteer*, 1 Sum. 570. And there is no evidence in this case, when the captain reported at the custom house or that he reported at all.

Counsel further contended that the defendants were not liable because of unseaworthiness of the vessel; and because the case

as reported, [the abstract of the bill did not disclose the names of the parties] showed that the plaintiffs had an adequate remedy at law.

BARROWS, J. The plaintiffs, owners of the ship *Marcia Green-leaf*, bring this bill against the defendants, who, with Charles H. McLellan, one of the plaintiffs, constitute the Spring Cove Ice Company, an unincorporated association, which, through Whitmore as their agent, chartered the plaintiffs' said ship September 12, 1878, to load with ice from the affreighters for New Orleans, to be delivered on payment of freight at the rate of two dollars and twenty-five cents per ton of two thousand pounds, intake weight. The charter party contains no express agreement as to demurrage. The plaintiffs claim a balance due them for freight under the agreement, and damages in the nature of demurrage, for delay on the part of the affreighters in discharging the vessel.

Defendants deny plaintiffs' right to freight, because, they say, the ship was unsuitable to carry the cargo by reason of her leaky condition; but their position is not sustained by the evidence, which shows only that the ship encountered heavy gales, and was leaking badly on her arrival at New Orleans, while it appears that just before loading she had been thoroughly repaired, and classed A, 1½, for five years on the record of the American Shipmasters' Association, under the inspection of Whitmore, one of the defendants, — an agent of said association; and there is no evidence that she was not staunch and amply seaworthy, or that she was not kept fairly free of water by pumping. The uncontradicted testimony of the master is that he "kept ship well pumped till ice discharged. There was no waste of ice by reason of leakage. In fact, the lower tier came out the best tier in the ship and in first rate order."

The communications which Hayden, acting for the owners of the ship, had with Whitmore, the manager for the defendants, the telegrams from and to the master at New Orleans, and the whole course of the business, ending in the disposition of the cargo by the defendants' agent, as well as the testimony of the

master himself, and the want of any contradictory testimony from the defendants, conclusively negative the matters set forth in the answer as the ground of defendants' denial of any liability for demurrage. It is clear that the delay and loss were not occasioned by any remissness on the part of the master in any duty which he owed the defendants by contract, or otherwise, but that they arose from the defendants' failure to provide for the reception and marketing of the cargo, and not from any fault of the plaintiffs, their servants or agents, or the vessel. Neither did the arrangement for the sale of the cargo, and the reception of the net proceeds by the master of the ship, or anything done by the master in pursuance of that arrangement, amount to a waiver or adjustment of any claim which the owners had for damages in the nature of demurrage, leaving only the balance of the freight to be adjusted with the defendants' treasurer.

Defendants' counsel further contends that a claim for demurrage can arise only out of the express terms of the charter party or express stipulations in the bill of lading, and that when both are silent respecting it as in the present case, none can be recovered. In support of this position, he cites *Horn* v. *Bensusan*, 9 C. and P. 709. But that case decides only that in the absence of an express contract as to demurrage, the owner of the vessel cannot *under the common counts* go into evidence to prove that she was detained beyond a reasonable time, and that, to entitle him to recover in such case a special count is necessary. The implication is strong against the position taken in defence.

We do not think that a failure to make an express agreement for a specific number of lay days, or for the payment of demurrage, will relieve the charterer from a liability to pay damages for detention, in the nature of demurrage, if he fails in the reasonable performance of his duty under the contract, and thereby unreasonably detains the vessel beyond the time when she ought to have been discharged. Certain mutual obligations rest upon both the parties to such a contract, one of which is due and reasonable diligence in the performance of what they have respectively undertaken; and in the absence of specific agreements of the parties themselves, as to the consequence of failure, or where

the contract is silent as to the precise latitude in the execution which is to be permitted, the law will always fall back upon the inquiry, what is reasonable and just under the circumstances, in view of which the parties may be presumed to have made their contract.

The only remaining objection to the maintenance of the bill, is that the claim is not properly cognizable in equity. But for the fact that there is one individual who seems to have an interest in the controversy, both as plaintiff and defendant, this objection would apparently be well taken, since our general equity jurisdiction is limited to cases "where there is not a plain, adequate and complete remedy at law." Laws of 1874, c. 175.

But it is familiar law, that the same person cannot in the same suit, sustain the two-fold character of plaintiff and defendant, to enforce a right or redress a wrong. *Denny* v. *Metcalf*, 28 Maine, 390 ; *Portland Bank* v. *Hyde*, 11 Maine, 198. Neither can one of two or more joint owners of a vessel maintain an action in his own name alone for freight, though he be also master. *Robinson* v. *Cushing*, 11 Maine, 480.

Since McLellan, who is a co-partowner in the vessel, and also a member of the ice company, would be a proper and necessary party, both as plaintiff and defendant to any suit at law brought for this cause, and this is not allowable ; it follows that there is not here an adequate, or indeed *any* remedy at law, and resort must be had to equity. We are of the opinion, that where this condition as to the parties exists, in cases otherwise remediable at law, a bill in equity may be maintained. In equity, the conflicting interests of the common member may be adjusted, and such decree can be made as shall be found to conform to the rights and liabilities of all the parties.

The case, upon the view of it already taken, is free from question as to the right of the plaintiffs to receive the balance of the freight money, and whatever sum might be found just and equitable as damages in the nature of demurrage. But we think it would be well that the evidence upon that point should be made more full and complete, before a final decree is entered up, and accordingly, unless the parties can agree upon the

amount, (which, if they will consider the question in a proper temper and disposition, it would seem they might readily do,) the case must be sent to a master to examine and report thereupon.

The case as presented, does not show the extent of McLellan's interest, either as an owner in the vessel, or as a member of the ice company, and this also is indispensable before a final decree in order that there may be a proper adjustment of his rights and liabilities.

> *Bill sustained with costs for*
> *complainants.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.